

ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

OCT - 5 2007

CLERK, U.S. DISTRICT COURT
By _____
          Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE SOUTHERN COMPANY,        )
                             )
    Plaintiff,               )       CIVIL ACTION
                             )       NO. _____
    v.                       )
                             )       **3-07CV1690-P**
DAUBEN, INC. d/b/a TEXAS     )
INTERNATIONAL PROPERTY       )              *15571*
ASSOCIATES,                  )
                             )
    Defendant.               )
_____)

## VERIFIED COMPLAINT

Plaintiff The Southern Company ("Southern Company") states the following as its

Verified Complaint brought pursuant to the Anticybersquatting Consumer Protection Act

("ACPA"), 15 U.S.C. § 1125(d)(1), against Defendant Dauben, Inc. d/b/a Texas International

Property Associates ("Defendant").

## INTRODUCTION

1.      Southern Company is a Fortune 500 Company that owns numerous incontestable

federal registrations for the SOUTHERN COMPANY trademark for energy related goods and

services.  Defendant is a habitual cybersquatter and typosquatter that is, with a bad faith intent to

profit from Southern Company's SOUTHERN COMPANY mark, wrongfully using the domain

names **sotherncompany.com** and **southerncopany.com** - close misspellings of the

SOUTHERN COMPANY mark - to divert consumers wrongfully and deceptively to its websites

for commercial gain, by creating a likelihood of confusion as to the source, sponsorship,

affiliation or endorsement of the websites.

2.      To stop Defendant's cybersquatting on the SOUTHERN COMPANY mark, Southern Company filed a complaint against Defendant under the Uniform Domain Name Dispute Resolution Policy ("UDRP") of the Internet Corporation for Assigned Names and Numbers ("ICANN"), and obtained an order finding that Defendant had registered and used the **sotherncompany.com** and **southerncopany.com** domain names in bad faith, and requiring transfer of the domain names to Southern Company.  However, Defendant has filed a frivolous lawsuit against Southern Company in the Justice of the Peace Court of Dallas County, Texas, for the sole purpose of blocking transfer of the domain names while it continues to profit through its unlawful use of these domain names consisting of misspelled versions of the SOUTHERN COMPANY mark.

3.      Accordingly, Southern Company files this lawsuit pursuant to the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1), to vindicate and protect its rights in its SOUTHERN COMPANY trademarks against the Defendant's blatant, willful, and deliberate attempts to free ride and profit upon the marks and to manipulate the domain name registration and enforcement system.  Southern Company seeks:  (1) an order transferring the **sotherncompany.com** and **southerncopany.com** domain names to Southern Company; (2) temporary, preliminary and permanent injunctive relief prohibiting Defendant from registering, trafficking in, or using any domain name incorporating or confusingly similar to the SOUTHERN COMPANY mark or to any other mark owned by Southern Company or its subsidiaries; (3) an award of actual or statutory damages; and (4) an award of attorney's fees and costs.

## PARTIES

4.      Southern Company is a corporation that is incorporated under the laws of the

State of Delaware, having its principal place of business located at 30 Ivan Allen Jr. Boulevard,

N.W., Atlanta, Georgia 30308.

5.      Defendant, upon information and belief, is a corporation that is incorporated

under the laws of the State of Texas, having its principal place of business located at 1200

Sycamore, No. 8354, Waxahachie, Texas 75165.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and

1338(a).

7.      This Court has personal jurisdiction over the Defendant because the Defendant is

headquartered and has its principal place of business in the Northern District of Texas, Dallas

Division.

8.      Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391

because the Defendant is a resident of Dallas, Texas.

## FACTUAL BACKGROUND

### A.      Southern Company's Trademark Rights in the SOUTHERN COMPANY Marks

9.      Southern Company is a diversified energy company with over $30 billion in

assets that is one of the largest generators of electricity and providers of energy-related services

in the United States.  In 2006, Southern Company sold 201 billion kilowatt-hour sales of

electricity through its four wholly-owned U.S. electric utility subsidiaries (Alabama Power

Company, Georgia Power Company, Gulf Power Company, and Mississippi Power Company)

and its wholly-owned wholesale electric supplier subsidiary (Southern Power Company).  Other

3

subsidiaries of Southern Company include Southern Nuclear, Southern LINC Wireless, Southern

Telecom, and Southern Company Services.  In addition to its electric generation, transmission

and distribution services, Southern Company, through its wholly-owned subsidiaries, provides

other services including wireless telecommunications services. These goods and services are all

offered under the SOUTHERN COMPANY service mark (the "SOUTHERN COMPANY

Mark") and under a family of service marks and trademarks that include the term "Southern

Company" (collectively, the "SOUTHERN COMPANY Marks").

10.    The SOUTHERN COMPANY Mark has been used continuously and exclusively

by Southern Company and its subsidiaries for the foregoing goods and services in the United

States, since before 1950.  Southern Company and its subsidiaries have used the SOUTHERN

COMPANY Marks extensively throughout the United States in interstate commerce to

distinctively and uniquely identify, advertise, market and promote their energy-related goods and

services.  In the United States, Southern Company operates more than 42,000 megawatts of

generating capacity.  In the southeastern United States, Southern Company, through its

subsidiaries, supplies energy to a 120,000-square-mile service territory spanning most of Georgia

and Alabama, southeastern Mississippi, and the panhandle region of Florida—an area in which

Southern Company has approximately 4.3 million customers.  Southern Company also

incorporates the SOUTHERN COMPANY Mark in and as part of service marks used by its

electric utility subsidiaries (e.g., GEORGIA POWER a SOUTHERN COMPANY).

11.    Southern Company is a Fortune 500 company, ranked 168 in the 2007 Fortune

500 survey, whose stock has been traded on the New York Stock Exchange since September 30,

1949.  In 2006, Southern Company reported a net income for 2006 of $1.57 billion on revenues

of $14.3 billion, with a return on equity of 14 percent, all under the SOUTHERN COMPANY

Mark. Southern Company employs more than 26,000 people in the United States. A copy of a portion of Southern Company's 2006 annual shareholder report is attached as Exhibit "A".

12.    Southern Company's family of SOUTHERN COMPANY Marks includes, but is not limited to, the following trademarks and service marks which are owned and used by Southern Company and federally registered with the United States Patent & Trademark Office ("PTO"): SOUTHERN COMPANY, SOUTHERN COMPANY & Design, SOUTHERN COMPANY & Triangle Design, SOUTHERN COMPANY ENERGY SOLUTIONS, SOUTHERN COMPANY ENERGY TO SERVE YOUR WORLD & Design, ALABAMA POWER A SOUTHERN COMPANY & Design, GEORGIA POWER A SOUTHERN COMPANY & Design, GULF POWER A SOUTHERN COMPANY & Design, and MISSISSIPPI POWER A SOUTHERN COMPANY & Design. Copies of the United States registration certificates for the approximately 30 federally registered SOUTHERN COMPANY Marks are attached as Exhibit "B". Southern Company uses these marks to identify products and services that it provides in the areas of electricity production and energy related services, including, but not limited to, generation, transmission and distribution of energy; consulting services; telecommunications services; and clothing. The SOUTHERN COMPANY Marks have appeared on the Principal Register of the PTO for more than five years, and therefore, have become incontestable. These United States registrations establish Southern Company's exclusive right to use the SOUTHERN COMPANY Marks in the United States

13.    Southern Company owns all rights, title, and interest in and to the SOUTHERN COMPANY Marks. The SOUTHERN COMPANY Marks are distinctive and serve to uniquely identify Southern Company and its goods and services to the consuming public. In addition, the SOUTHERN COMPANY Marks have been the subject of tens of millions of dollars of

advertising and promotion in the United States, and billions of dollars in services identified by

the SOUTHERN COMPANY Marks have been sold. Southern Company has invested a

substantial amount of time, money and other resources promoting its family of SOUTHERN

COMPANY Marks to advertise and identify its products and services, and has established

tremendous goodwill in those marks. As a result, the SOUTHERN COMPANY Marks are well-

known among the relevant consuming public as identifying the services of Southern Company

and its subsidiaries and affiliates, and representing the high quality and level of consistency that

customers of Southern Company expect to receive.

14.    Southern Company owns and maintains an Internet web site located at

<www.southerncompany.com>, which it uses to provide information about itself and its

subsidiaries and affiliates and the energy-related goods and services that they provide. A copy of

portions of Southern Company's southerncompany.com web site is attached hereto as Exhibit

"C".

**B.**    **Defendant's Bad Faith Registration and Use of the sotherncompany.com and southerncopany.com Domain Names**

15.    Respondent has registered the domain names, **sotherncompany.com** and

**southerncopany.com**, which are close misspellings of the SOUTHERN COMPANY Mark

which merely omit one letter in either the word "southern" or the word "company."

16.    Persons inadvertently misspelling the words "southern" or "company" and typing

the **sotherncompany.com and southerncopany.com** domain names are directed to the

Defendant's websites, which contain a list of hyperlinks to numerous other websites, but which

also include references to Southern Company and to the SOUTHERN COMPANY Mark in a

way that deceptively suggests that Southern Company might sponsor or have some connection or

affiliation with the websites. For example, the home page of the website appearing at

6

**sotherncompany.com** has a banner at the top of the page saying, "Welcome to sotherncompany.com," and, immediately below that, misleadingly states that the website is "For resources and information on Southern company and Southern." Below that is a series of links, that start with the terms "Southern company," "Southern," and "Company," and which also include real estate related links. Clicking on these links takes a user to other pages of the website, which contain hyperlinks to other websites advertising a variety of goods and services that have nothing to do with Southern Company. A copy of certain pages from the **sotherncompany.com** website from September 27, 2007 is attached as Exhibit "D".

17.     The website displayed at the domain name **southerncopany.com** is virtually identical to the website displayed at **sotherncompany.com** and also consists of advertising links through which Defendant is seeking to profit from Southern Company's SOUTHERN COMPANY Marks. A copy of certain pages from the **southercopany.com** website from September 27, 2007 is attached as Exhibit "E".

18.     When a person looking for the Southern Company website lands on one of Defendant's websites, the person has been diverted from the Southern Company website he or she was seeking to visit, and Southern Company may have lost the opportunity to interact with that person. Furthermore, that person may click on one of the advertisements or hyperlinks on one of Defendant's sites mistakenly believing that Southern Company has authorized or endorsed the site or its advertisements or hyperlinks.

19.     Defendant uses the **sotherncompany.com** and **southerncopany.com** domain names to improperly profit from the SOUTHERN COMPANY Mark and the goodwill associated with that mark. Upon information and belief, Defendant and/or its agents or affiliates receive a

payment each time that an Internet user clicks on one or more of the many links or advertisements on the **sotherncompany.com** or **southerncopany.com** websites.

### C.    <u>Defendant is a Habitual Cybersquatter</u>

20.    Not only has the Defendant registered and used the **sotherncompany.com** and **southerncopany.com** domain names in bad faith, but Defendant also has registered a large number of other domain names that incorporate well-known and famous trademarks or consist of misspellings of well-known and famous trademarks.  A copy of search results identifying certain other domain names owned by Defendant is attached as Exhibit "F".  A review of these other domain names shows that Defendant has consistently misappropriated the trademarks of numerous other companies, including misspelled variations of "General Electric," "CNN," "WWE Wrestling," "Cartoon Network," "Raymond James," and "Procter & Gamble."  For example, Respondent has registered the domain names: "abs-cnn.com," "generalelectricconsumercreditcardcenter.com," "wwewrstling.com," "raymaondjames.com," "caretoonnetwok.com," "myspacelayouts.com," and "proctorngamble.com."

21.    Furthermore, Defendant has been found guilty of cybersquatting in more than 40 ICANN UDRP decisions rendered since March 2007 alone.  In all of these decisions, Defendant was found to have unlawfully and in bad faith registered and used domain names that are confusing similar to the trademarks of others.  A list of these proceedings is attached as Exhibit "G".

22.    In fact, Defendant's bad faith registration of typosquatted domain names is so notorious that the Dallas Morning News has reported on Defendant, warning the public that it owns "an untold number of Web sites that await fumbling fingers."  A copy of the Dallas Morning News article is attached as Exhibit "H".

**D.    The UDRP Proceeding Concerning the Domain Names sotherncompany.com and southerncopany.com**

23.    On May 25, 2007, Southern Company filed with the World Intellectual Property Organization ("WIPO") a complaint against Defendant under the ICANN UDRP Policy, to require transfer of the **sotherncompany.com** domain name to Southern Company.  A copy of this complaint is attached hereto as Exhibit "I".

24.    After filing the UDRP Complaint, Southern Company discovered that Defendant had also registered and was using the **southerncopany.com** domain name in bad faith.  Southern Company amended its Complaint on June 19, 2005 to seek the transfer of the **southerncopany.com** domain name in addition to the **sotherncompany.com** domain name.  A copy of the amendment to the complaint is attached hereto as Exhibit "J".

25.    In the UDRP proceeding, Southern Company presented evidence that: (1) the **sotherncompany.com** and **southerncopany.com** domain names were identical and, therefore, confusingly similar to Southern Company's SOUTHERN COMPANY Marks; (2) Defendant had no rights or legitimate interests in the **sotherncompany.com** and **southerncopany.com** domain names; and (3) the Defendant had registered and was using the **sotherncompany.com** and **southerncopany.com** domain names in bad faith.

26.    As part of its written response to Southern Company's complaint, Defendant argued that the SOUTHERN COMPANY Marks were generic or descriptive terms which Southern Company used for "doing business only in several small irrelevant states in the United States;" that Southern Company had no protectible trademark rights in the marks it had been using for more than 50 consecutive years, including its incontestable federally registered marks; that Defendant had rights and a legitimate interest in the domain names on the basis that it was using the domain names in connection with a *bona fide* offering of goods or services; and that

Defendant had not registered, and was not using, the domain names in bad faith. A copy of Defendant's written response filed in the UDRP proceeding is attached hereto as Exhibit "K". Defendant's arguments were patently frivolous.

27.    On August 24, 2007, the WIPO arbitration panel ("the Panel") rendered a decision in favor of Southern Company on the UDRP Complaint. In that decision the Panel found: (1) that Defendant's argument that Southern Company's trademarks and service marks are too generic or descriptive to afford any enforceable rights in those marks was "unsound," and that Southern Company has well-established rights in its SOUTHERN COMPANY mark for which it owns several incontestable federal trademark registrations; (2) that the domain names were confusingly similar to Southern Company's mark; (3) that Defendant has no rights or legitimate interest in the domain names consisting of misspelled variations of the SOUTHERN COMPANY Mark; and (4) that Defendant had registered and was using the domain names in bad faith. As evidence of bad faith, the Panel relied on Defendant's registration and use of the domain names "to capture Internet users and divert them to websites unrelated to [Southern Company] by exploiting user confusion and mistakes…for its own commercial gain." (Order, at 14). The Panel also noted that "there can be little doubt that the potential for confusion is created intentionally by . . . [Defendant's] attempt to capture a user's likely typographical or spelling errors in attempting to access [Southern Company's] website;" and that "the only reason for [Defendant] to adopt the Domain Names was to exploit the similarity to [Southern Company's] marks and domain names and the possibility of users making mistakes when trying to reach [Southern Company's] website." (Id. at 12). The Panel explained that:

> Typosquatting, however, is the intentional misspelling of words with intent to siphon off traffic from its intended destination, by preying on Internauts who make common spelling errors. ***Typosquatting is inherently parasitic and of itself evidence of bad faith.***

10

(Id. at 14)(emphasis added).  Accordingly, the Panel ordered that the **sotherncompany.com** and

**southerncopany.com** domain names be transferred to Southern Company.  A copy of the

Panel's decision is attached hereto as Exhibit "L".

     **E.**     **Defendant's Filing of a Frivolous Action in Dallas Small Claims Court to Block the Transfer of the Domain Names**

     28.     Under Section 4(k) of the UDRP Policy, the domain name registrar is required to

transfer the domain name on the tenth business day after receiving notification of a UDRP

Panel's decision, unless the registrant submits official documentation, within that ten day period,

demonstrating that it has commenced a legal proceeding against the Complainant in a

jurisdiction to which the Complainant submits.  In its UDRP Complaint, Southern Company

consented to jurisdiction in the United States District Court for the Northern District of Texas,

where both the Defendant and the registrar of the domain names are located, for any court

proceeding initiated under UDRP Policy Section 4 (k).

     29.     In a transparent attempt to avoid or delay the consequences of its typosquatting, to

disrupt the UDRP proceeding, and to avoid the Panel's order to transfer the domain names,

Defendant filed a lawsuit against Southern Company, not in the U.S. District Court for the

Northern District of Texas, but in the Justice of the Peace Court (a small claims court) in Dallas

County, Texas.  In its petition filed in Justice of the Peace Court, Defendant falsely alleged that

Southern Company had contractually consented to jurisdiction in the Justice of the Peace Court,

and alleged that Southern Company had no rights in the domain names under the laws of the

State of Texas; that Defendant was the rightful owner of the domain names; and that Southern

Company was trying to "hijack" the domain names.  Defendant's petition requests that the court

grant a judgment declaring Defendant to be the rightful owner of the domain names under Texas

law, and enter an order prohibiting any transfer of the domain names to Southern Company. A copy of the Defendant's petition is attached hereto as Exhibit "M".

30.    Not only is Defendant's Justice of the Peace lawsuit completely without merit, but it also suffers from at least two fatal jurisdictional defects. First, Defendant seeks injunctive and declaratory relief in a small claims court which does not have subject matter jurisdiction over actions for injunctive and declaratory relief, in an attempt to avoid the federal court system which has original jurisdiction over trademark cybersquatting disputes pursuant to 28 U.S.C. §1338(a), and specifically to avoid the U.S. District Court for the Northern District of Texas - the court to which Southern Company submitted in the UDRP proceeding. Second, Southern Company does not conduct any business in, and has no connection to, the State of Texas; therefore, Southern Company lacks minimum contacts with the State of Texas sufficient to support a Texas state court's exercise of personal jurisdiction over it.

31.    However, Defendant's ploy in filing the Justice of the Peace lawsuit was successful in blocking transfer of the domain names to Southern Company pursuant to the UDRP Order. The registrar of the **sotherncompany.com** and **southerncopany.com** domain names has informed Southern Company that it will not transfer the domain names until it receives a final ruling from an adjudicating court. (See September 29, 2007 e-mail attached hereto as Exhibit "N").

32.    Accordingly, although there is no question that Defendant has registered and is using the **sotherncompany.**com and **southerncopany.**com domain names in bad faith, and Southern Company has already obtained a UDRP order requiring transfer of the domain names, Southern Company now is required to expend further time and money to file this lawsuit to

enjoin Defendant's unlawful conduct and to obtain transfer of these domain names and other appropriate relief.

### COUNT I
### Trademark Cybersquatting in Violation of 15 U.S.C. § 1125(d)(1)

33.     Each and every allegation of the Complaint is incorporated herein as though fully set forth.

34.     Defendant has registered, trafficked in, or used the **sotherncompany.com** and **southerncopany.com** domain names, which are identical or confusingly similar to, or dilutive of, Southern Company's distinctive SOUTHERN COMPANY Mark.

35.     Defendant has registered and is using the **sotherncompany.com** and **southerncopany.com** domain names with a bad faith intent to profit from Southern Company's federally registered SOUTHERN COMPANY Mark, as evidenced by the following:

a.      The Defendant has no trademark or intellectual property rights for the SOUTHERN COMPANY Mark, or for any mark including the term "Southern Company" or consisting of misspelled variations of "Southern Company;"

b.      Defendant is not using, nor has it ever used, the "Southern Company" name or domain names, or any misspelled variation thereof, in connection with a bona fide offering of goods or services, nor has Defendant made non-commercial or fair use of the SOUTHERN COMPANY Mark, or any misspelled variation thereof, in sites accessible at the domain names;

c.      Instead, Defendant has been and is currently using the **sotherncompany.com** and **southerncopany.com** domain names to divert users searching the Internet for Southern Company's registered service mark and SOUTHERN COMPANY branded energy related services to Defendant's websites, which contain advertisements, information about, and hyperlinks to other websites that have nothing to do with Southern Company;

d.      By using the **sotherncompany.com** and **southerncopany.com** domain names, Defendant has intentionally attempted to attract, for commercial gain, Internet users to its websites by creating a likelihood of confusion with Southern Company's SOUTHERN COMPANY Marks and Southern Company's "southerncompany.com" website as to the source, sponsorship, affiliation, or endorsement of Defendant's websites appearing at **sotherncompany.com** and **southerncopany.com**.  In short, Defendant has sought to unjustly enrich itself by misappropriating Southern Company's goodwill and creating a likelihood of confusion with Southern Company's SOUTHERN COMPANY Marks, at the expense of Southern Company;

e.      By registering the **sotherncompany.com** and **southercopany.com** domain names, Defendant has been diverting consumers away from Southern Company's website and has been making it more difficult for Southern Company's customers and the general public to locate Southern Company's legitimate website, thereby disrupting Southern Company's business;

f.      Defendant has engaged in a serial and widespread pattern of cybersquatting and typosquatting on well-known trademarks.  Defendant has already been found to have registered and used domain names in bad faith in more than 40 UDRP proceedings since March 2007 alone, and is currently engaged in typosquatting on a number of other famous marks, such as CNN, Cartoon Network, Proctor & Gamble, General Electric, and WWE Wrestling, in addition to the SOUTHERN COMPANY Mark, by registering and using in bad faith domain names that are close misspellings of the marks;

g.      Defendant has further attempted to manipulate the domain name registration and enforcement system by filing a frivolous lawsuit in Texas small claims court, in order to block

transfer of the domain names to Southern Company and to allow Defendant to continue to profit in bad faith from its use of domain names consisting of misspelled variations of the SOUTHERN COMPANY mark.

36.    Defendant's use of the **sotherncompany.com** and **southerncopany.com** domain names amounts to cybersquatting in violation of 15 U.S.C. § 1125(d)(1).

37.    Defendant's cybersquatting has been and is causing Southern Company irreparable harm for which there exists no adequate remedy at law, entitling Southern Company to injunctive relief.

38.    Defendant's blatant and widespread cybersquatting activities, as well as its bad faith efforts to manipulate the domain name registration and enforcement system, have been willful and deliberate, and entitle Southern Company not only to monetary relief — including an award of actual damages and a disgorgement of the Defendant's profits, with the amount of such monetary relief trebled due to the willful nature of Defendant's conduct, or of statutory damages in an amount of $100,000 per domain name – but also to an award of attorney's fees.  In fact, an award of monetary relief and attorneys' fees is necessary and essential in this case not only to compensate Southern Company and to prevent Defendant from being unjustly enriched, but also to discourage the Defendant's widespread, intentional, and deliberately wrongful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE Southern Company respectfully requests that this Court grant the following relief:

1.    That the Court grant judgment in favor of Southern Company and against the Defendant.

2.      That the Court enter an order requiring the domain name registrar to transfer the

**sotherncompany.com** and **southerncopany.com** domain names to Southern Company;

3.      That the Court enter a temporary restraining order and a preliminary and

permanent injunction, prohibiting Defendant and its respective officers, directors, agents,

employees, representatives, licensees, and all persons acting for, with, by, through and under any

of them, from:  (i) using, canceling, or transferring to any person or entity other than to Southern

Company, the **sotherncompany.com** and **southerncopany.com** domain names; and (ii)

registering, using or trafficking in any domain name that incorporates or is confusingly similar to

any of the SOUTHERN COMPANY Marks or any other trademarks or service marks owned by

Southern Company or its subsidiaries, including, but not limited to, the following marks:

Georgia Power, Alabama Power, Mississippi Power, Gulf Power, Southern Power, Southern

Nuclear, Southern LINC, Southern Telecom, and Southern Company Services;

4.      That the Court permanently enjoin Defendant and its respective officers, directors,

agents, employees, attorneys, representatives, licensees, and all persons acting for, with, by,

through and under any of them, from (i) selling, offering for sale, distributing, or advertising any

goods or services through use of the "SOUTHERN COMPANY" Mark or of any mark or marks

confusingly similar to the SOUTHERN COMPANY Mark or to any other marks owned by

Southern Company or its subsidiaries, (ii) using the "SOUTHERN COMPANY" Marks, or any

other mark or marks identical or confusingly similar to the SOUTHERN COMPANY Marks or

to any other marks owned by Southern Company or its subsidiaries, in any manner that is likely

to cause confusion, to cause mistake or to deceive the public, and (iii) committing any acts

calculated to cause confusion, or which result in a likelihood that purchasers and/or members of

the public will be confused, that Defendant's services originate with Southern Company or with

16

any of its subsidiaries, or that Defendant is sponsored by or affiliated with or associated with Southern Company or with any of its subsidiaries.

5.      That the Court enter judgment in favor of Southern Company for actual damages and/or a disgorgement of Defendant's profits, with such monetary relief trebled because of the willful acts described herein in disregard of Southern Company's known rights, pursuant to 15 U.S.C. § 1117(a); or, alternatively, an award of statutory damages of up to $100,000 per domain name pursuant to 15 U.S.C. § 1117(d);

6.      That Southern Company recover from the Defendant its reasonable attorneys' fees due to the exceptional nature of this case, pursuant to 15 U.S.C. § 1117; and

7.      That the Court order such other and further relief as is deemed just, equitable, and proper.

Respectfully submitted this 5th day of October, 2007.

BY: _____

Thomas C. Wright
State Bar No. 24028146
Lisa Shereen Zamaludin
State Bar No. 00788741
Gardere Wynne Sewell LLP
1601 Elm Street, Suite 3000
Dallas, TX 75201-4761
Tel: 214-999-3000
Fax: 214-999-4667

Of Counsel:

TROUTMAN SANDERS LLP
Mark S. VanderBroek
Jennifer D'Angelo
600 Peachtree St. NE
Suite 5200
Atlanta, Georgia 30308
404-885-3000

**COUNSEL FOR
SOUTHERN COMPANY**

## VERIFICATION

I, DAVID R ALTMAN _____, declare as follows:

I am the Vice Presdent Corporate Communtatiof Southern Company Services, Inc.  I have read the foregoing VERIFIED COMPLAINT and know the contents thereof, and the same are true of my personal knowledge or on information supplied to me by officers of or persons employed or retained by The Southern Company who are knowledgeable of such contents.

Pursuant to the provisions of 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this _____ day of October, 2007.


BY: _____

David R. Altman

Vice President

Southern Company

# EXHIBIT A



SOUTHERN COMPANY  2006 ANNUAL REPORT

.01

every second...



# of every minute, of every

CONTENTS

02  LETTER TO SHAREHOLDERS
05  FINANCIAL HIGHLIGHTS
06  THE GROWING SOUTHEAST
08  MEETING DEMAND
10  CIRCLE OF LIFE
14  OUR ENVIRONMENTAL EFFORTS
16  EXPANDING OUR FOOTPRINT
18  FINANCIAL GOALS & PERFORMANCE
20  FINANCIAL REVIEW
80  BOARD OF DIRECTORS
82  MANAGEMENT COUNCIL
84  STOCKHOLDER INFORMATION

...people are plugging in, turning on, and using more and more energy to live their lives. The importance of an adequate and reliable supply of energy in the U.S. is steadily growing. And, as our 21st century, high-tech, digital economy expands and our population grows, the demand for energy will be even greater. At Atlanta-based Southern Company, the premier electricity supplier to the Southeast, we're working hard to meet this demand and to ensure that our region has the electricity that's needed to continue to prosper. We're also working hard to keep our costs down and to generate electricity that's cleaner than ever before.

# hour, of every day...

Southern Company serves 4.3 million customers in one of the nation's fastest-growing regions. With more than 42,000 megawatts of generating capacity, and a competitive generation business, Southern Company is a major source of electricity in the southeastern U.S.