IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE SOUTHERN COMPANY, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:07-CV-1690-P |
| | § | |
| DAUBEN, INC. d/b/a TEXAS INTERNATIONAL PROPERTY ASSOCIATES, | § § § | |
| | § | |
| *Defendant*. | § | |

### ORDER

Now before the Court is Plaintiff The Southern Company's ("Plaintiff") Motion for Temporary Restraining Order and Preliminary Injunction ("Motion"), filed October 5, 2007. Defendant Dauben, Inc., doing business as Texas International Property Associates ("Defendant") filed a response on October 12, 2007. Plaintiff then filed a reply on October 16, 2007. After reviewing Defendant's Motion, the evidence, and the applicable law, the Court GRANTS Plaintiff's Motion .

**I.  Background**

Defendant is the owner of the domains SOTHERNCOMPANY.COM and SOUTHERNCOPANY.COM ("Defendant's domain names") which are both similar to Plaintiff's domain SOUTHERNCOMPANY.COM. On May 25, 2007, Plaintiff filed a Uniform Domain Name Dispute Resolution ("UDRP") action with the World Intellectual Property Organization ("WIPO") regarding the Defendant's domain names. (Mot. at 4; Resp ¶ 2.) In late August or early September of 2007, the WIPO arbitration panel rendered a decision in favor of Plaintiff and ordered transfer of Defendant's domain names to Plaintiff.

Meanwhile, on July 23, 2007 Defendant filed suit in the Justice of Peace Court of Dallas County seeking an order prohibiting the transfer of Defendant's domain names to Plaintiff. (App. Resp. at 2.) Plaintiff unsuccessfully challenged the Justice of the Peace Court's jurisdiction. Trial in the Justice of Peace Court is currently set for October 30, 2007. (*Id*. at 52.)

On October 5, 2007, Plaintiff filed this action to obtain a temporary restraining order and preliminary injunction prohibiting Defendant from "using, canceling, or transferring" Defendant's domain names and "registering, using, or trafficking in any other domain name that incorporates or is confusingly similar to any of the SOUTHER COMPANY marks." (Mot. at 13.) Defendant in opposition to Plaintiff's Motion argues the following: (1) this action violates the Anti-Injunction Act 28 U.S.C. § 2283; (2) Plaintiff's trademark claims should have been filed as counterclaims in state court; and (3) the elements necessary to grant a temporary restraining order or preliminary injunction are not present in this case. In addition, Defendant argues that the requirements for the granting of an *ex parte* restraining order are not present here. However, because the Court has allowed Defendant to respond to Plaintiff's Motion, the Court dismisses Defendant's latter argument as moot. The Court will address Defendant's arguments (1) - (3) in turn.

## II. Discussion

### a. The Anti-Injunction Act is not applicable in this case.

Pursuant to 28 U.S.C. § 2283, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." Defendant argues that the Court should decline to take action in this suit and dismiss Plaintiff's suit because a ruling in favor of Plaintiff's Motion would usurp the state court's "ability to issue a binding

Case 3:07-cv-01690-P-BD   Document 14   Filed 10/22/07   Page 3 of 8   PageID 284

ruling on the parties' rights." (Resp. ¶ 9.)  The Court disagrees with Defendant.  The Anti-Injunction Act is not pertinent to the case at hand because Plaintiff is not seeking the Court to enjoin the state court proceedings; rather, Plaintiff seeks to temporarily restrain Defendant from wrongful conduct in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) pending the outcome of this suit.

>   b.    **The Court should not abstain from exercising jurisdiction.**

Defendant correctly states, and Plaintiff agrees, that federal courts do not have exclusive jurisdiction over actions brought under the Lanham Act.  *See* 28 U.S.C. § 1338(a).  Defendant argues that Plaintiff's trademark claims should have been filed as counterclaims in state court and hence are improperly brought in this Court. (Resp. ¶ 13.)  Plaintiff asserts that while Plaintiff could have brought its cybersquatting claim as a counterclaim in state court, it exercised its right to pursue this federal claim in federal court. (Reply at 4.)  The Court agrees with Plaintiff.

Defendant also argues briefly that the Court should abstain from exercising jurisdiction in this action.  The Supreme Court has emphasized that as a general rule a federal court may not abstain from jurisdiction simply because there are parallel proceedings in a state court. *Colorado River Water Conservation Dist. v. United States*, 96 S. Ct. 1236, 1246 (1976). However, in spite of the federal court's "virtually unflagging obligation . . . to exercise the jurisdiction given them," the Supreme Court determined that there were a few "exceptional circumstances" in which a federal court may abstain based on concurrent litigation. *Id*. *Colorado River* identified four factors that a district court should consider when determining whether "exceptional circumstances" overcome its general duty to exercise jurisdiction. These factors are: (1) whether another court has assumed jurisdiction over property, (2) whether the

federal forum is inconvenient, (3) whether it is desirable to avoid piecemeal litigation, and (4) the order in which jurisdiction was obtained by the concurrent forums. Later, in *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 103 S. Ct. 927, (1983), the Supreme Court added two additional factors to the *Colorado River* test. These factors are: (1) whether the federal law provides the rule of decision and (2) whether the state court proceedings are inadequate to protect the federal court plaintiff's rights. *Id*. at 942.  In *Moses Cone*, the Court stressed the very limited nature of abstention under the *Colorado River* doctrine and noted that a decision to dismiss did not rest on "a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id*. at 937.

Here the Court does not find any factors that would offset the general rule of exercise of jurisdiction.  Though the state court action was filed first in this case, the federal claim was not asserted and clearly federal law provides the rule of decision.  In addition, this federal forum is not inconvenient to the parties.  Therefore, the Court finds that abstention is not appropriate in this case.  The Court now turns to whether the granting of a preliminary injunction is appropriate here.

    **c.**    **Preliminary injunction is appropriate in this case.**

To obtain a temporary restraining order or preliminary injunction, the moving party must demonstrate to the Court that: (1) there is a substantial likelihood of success on the merits; (2) there is a substantial threat of irreparable injury to the plaintiff if the injunction is not granted; (3) the threatened outweighs any injury the injunction may cause to the defendant; and (4) granting the injunction will not disserve the public interest. *See Sugar Busters, LLC v. Brennan*, 177 F.3d 258, 265 (5th Cir. 1999).  If the moving party cannot prove all four of these elements, a

court must deny the injunctive relief since "[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

### 1.      Likelihood of Success on the Merits

When determining the likelihood of success on the merits, a court looks to the standards of the substantive law. *See Roho, Inc. V. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990). To obtain an injunction, the likelihood of success must be more than negligible. *See Compact Van Equip. Co. v. Leggett & Platt, Inc.*, 566 F.2d 952, 954 (5th Cir. 1978).

Plaintiff seeks injunctive relief on the grounds that Defendant has violated the Federal Anti-Cybersquatting Consumer Protection Act. (Mot. at 5.) To prevail on a claim of cybersquatting under 15 U.S.C. § 1125(d), Plaintiff must prove: (1) that its mark is distinctive; (2) that the Defendant registers or uses a domain name that is "identical or confusingly similar to that mark;" and (3) that the Defendant "has a bad faith intent to profit from the mark." 15 U.S.C. § 1125(d)(1)(A). Plaintiff's evidence establishes that Defendant is using the SOTHERNCOMPANY.COM and SOUTHERNCOPANY.COM domain names which are close misspellings of, and therefore confusingly similar to, the federally registered, distinct, SOUTHERN COMPANY Mark. Also, it is clear to the Court that Defendant adopted the SOUTHERN COMPANY Mark and domain name, so as to divert mistyping Internet users looking for Plaintiff's website to the Defendant's sites, where Defendant gets paid every time a user clicks on a hyperlink. In addition, the Court finds the WIPO arbitration panel's finding of bad faith in this case persuasive. (Compl. Exhibit L.) Because Defendant continues to own and utilize the SOTHERNCOMPANY.COM and SOUTHERNCOPANY.COM domains and websites, and because of the likelihood of confusion amongst users and consumers online, the

Court finds that Plaintiff is likely to succeed on its Anti-Cybersquatting Consumer Protection Act cause of action.

### 2. Irreparable Injury

An irreparable injury is one that can not be remedied by monetary damages following trial. *Deerfield Med. Ctr. v. Deerfield Beach*, 661, F.2d 328, 338 (5th Cir. 1981). Establishing a strong likelihood of confusion in the consumer's mind "almost inevitably establishes irreparable harm." *Church of Scientology Int'l v. Elmira Mission of Church of Scientology*, 794 F.2d 38, 42 (2d Cir. 1985); *see also Lennar Pac. Props. Mgmt. v. Dauben, Inc.*, No. 3:07-CV-1411-G (N.D. Tex. Aug. 6, 2007) ("[T]rademark infringement is, as a matter of law, an irreparable injury."). Plaintiff's evidence establishes the danger of confusion and loss of Plaintiff's good will as a result of consumer confusion, and in turn, establishes a significant risk of irreparable injury. (*See* Mot. at 11.)

### 3. Balancing the Risks of Injury

The risk of injury to the Plaintiff in the absence of a preliminary injunction outweighs any risk of injury to Defendant that might result from granting the preliminary injunction. The risk to Defendant is small. If the Plaintiff's preliminary injunction request is granted, Defendant is prohibited from using, transferring,[1] or cancelling SOTHERNCOMPANY.COM and SOUTHERNCOPANY.COM. Defendant may no longer profit from the good will or brand recognition enjoyed by Plaintiff. Because Plaintiff's likelihood of success is great, the risk of harm to Plaintiff, resulting from consumer confusion and loss of Plaintiff's good will as a result of consumer confusion, outweighs the risk of harm to Defendant.

---

[1] Dauben, Inc. would not be prohibited from transferring SOTHERNCOMPANY.COM and SOUTHERNCOPANY.COM to Plaintiff, The Southern Company.

### 4. Public Interest

Granting a preliminary injunction will not disserve the public interest, as it promotes more accurate identification of sponsors of Internet addresses and web sites. A temporary restraining order will minimize consumer and public confusion regarding the original source or affiliation of goods and services. Making trademark infringement unprofitable will likewise serve the public's interest in minimizing public confusion and even deception. *See Lennar Pac. Props. Mgmt., Inc.*, No. 3:07-CV-1411-G.

### III. Conclusion

Because the Court finds Plaintiff has met its burden on each of the four required elements warranting a preliminary injunction, the Court GRANTS Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. As of the date of this Order, Defendant, its attorneys, agents, directors, representatives, and those persons or entities acting in concert with them are enjoined and restrained from:

    a. Registering, transferring,[2] trafficking, using, or maintaining the registration of the domain names, SOTHERNCOMPANY.COM and SOUTHERNCOPANY.COM , or any other domain name that is identical or confusingly similar to any of Plaintiff's SOUTHERN COMPANY marks;

    b. Using the SOUTHERN COMPANY marks, the mark or name SOUTHERN COMPANY, or any confusingly similar mark, name, domain, or colorable imitation thereof, in connection with Defendant's business which may mislead or confuse a consumer as to the source, affiliation, or sponsorship of such business;

    c. Otherwise infringing or diluting the distinctive quality of the SOUTHERN COMPANY marks;

---

[2] Dauben, Inc. is not be prohibited from transferring SOTHERNCOMPANY.COM and SOUTHERNCOPANY.COM to Plaintiff, The Southern Company.

    d.  Injuring Plaintiff's business reputation and the goodwill associated with Plaintiff's business reputation and the good will associated with Plaintiff's SOUTHERN COMPANY marks and from otherwise unfairly competing with Plaintiff;

    e.  Causing a likelihood of confusion or misunderstanding as to source, sponsorship, association, affiliation, approval, or certification with or by Plaintiff, or engaging in conduct tending to create a false commercial impression of Plaintiff's products or services or any other conduct which tends to pass off Defendant's products or services as those of Plaintiff.

**IT IS SO ORDERED.**

Signed this 22nd day of October 2007.

                                                  _____
                                                  JORGE A. SOLIS
                                                  UNITED STATES DISTRICT JUDGE